Receipt # 24691  
E-RECORDED  
Instr # 46222  
Rebecca S. Wotton Lincoln County Registry of Deeds  

Bk 5344    PG 237  
01/11/2019 01:44:39 PM  
Pages 6  
MISCELLANEOUS RECORDING

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
1-866-874-5860

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #:

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $175,221.00      FHA/VA/RHS Case No:
Unpaid Principal Amount: $149,031.63
New Principal Amount: $192,271.20
New Money (Cap): $43,239.57

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Loan Modification Agreement ("Agreement"), made this **7TH** day of **DECEMBER, 2018**, between **ROBERT H ROGERS JR AND, MARY H ROGERS** ("Borrower"), whose address is **85 SHADY LANE, WISCASSET, MAINE 04578** and **CARRINGTON MORTGAGE SERVICES, LLC** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A, ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **NOVEMBER 10, 2005** and recorded on **NOVEMBER 16, 2005** in **INSTRUMENT NO. 13311 BOOK 3590 PAGE 137, LINCOLN COUNTY, MAINE**, and (2) the Note, in the original principal amount of U.S. **$175,221.00**, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at **85 SHADY LANE, WISCASSET, MAINE 04578**

the real property described is located in **LINCOLN COUNTY, MAINE** and being set forth as follows:

Page 1



**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **DECEMBER 1, 2018** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$192,271.20**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$43,239.57** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed. **This Unpaid Principal Balance has been reduced by the HUD Partial Claim amount of $9,655.97.**

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.8750%**, from **DECEMBER 1, 2018**. The yearly rate of **4.8750%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$1,381.43**, beginning on the **1ST** day of **JANUARY, 2019**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$1,017.52**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$363.91**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. If on **DECEMBER 1, 2048** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing**

BK: 5344 PG: 238

in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Subordinate Note/Mortgage.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8. Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

Page 3

BK: 5344 PG: 239

In Witness Whereof, I have executed this Agreement.

_____ 12/28/18
Borrower: ROBERT H ROGERS JR                Date

_____ 12/28/18
Borrower: MARY H ROGERS                     Date

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**

STATE OF **MAINE**
COUNTY OF __Lincoln__

The foregoing instrument was acknowledged before me this __Dec. 28, 2018__ by
**ROBERT H ROGERS JR, MARY H ROGERS**

_____
Notary Public

Print Name: __Linda F. Smith__

My commission expires: __8/27/19__

LINDA F. SMITH
NOTARY PUBLIC
My Comm. Exp.
Aug 27, 2019
MAINE

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC**

By _____ (print name)  **JAN 0 2 2019**
Jill A. Fuller Director Loss Mitigation  (title)                                Date
Carrington Mortgage Services, LLC

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CA___ )
County of ___ORANGE___ )

On __JAN 0 2 2019__ before me __Alex J. Santa Maria__ Notary Public, personally appeared ___Jill A. Fuller___, the ___Director___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

```
ALEX J. SANTA MARIA
Notary Public - California
Orange County
Commission # 2161623
My Comm. Expires Jul 31, 2020
```

Page 5

EXHIBIT A

BORROWER(S): ROBERT H ROGERS JR AND, MARY H ROGERS

LOAN NUMBER:

LEGAL DESCRIPTION:

The land referred to in this document is situated in the STATE OF MAINE, COUNTY OF LINCOLN, CITY/TOWN OF WISCASSET, and described as follows:

A CERTAIN LOT OR PARCEL OF LAND, TOGETHER WITH BUILDINGS THEREON, SITUATE IN
THE TOWN OF WISCASSET, COUNTY OF LINCOLN, STATE OF MAINE, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF SHADY LANE, WHICH POINT IS THE NORTHEASTERLY CORNER OF THE LAND OF DONALD A. TRUE AND DENISE L. TRUE (REFERENCE DEED RECORDED IN THE LINCOLN COUNTY REGISTRY OF DEEDS IN BOOK 2055,
PAGE 216); THENCE SOUTHERLY ALONG THE PROPERTY OF SAID TRUE A DISTANCE OF TWO
HUNDRED TWENTY-NINE (229') FEET TO AN IRON REINFORCING ROD; THENCE EASTERLY (AT
A 90° ANGLE) BY AND ALONG REMAINING LAND OF GRANTORS A DISTANCE OF ONE HUNDRED
NINETY-ONE (191') FEET TO AN IRON REINFORCING ROD; THENCE NORTHEASTERLY BY AND
ALONG REMAINING LAND OF GRANTORS A DISTANCE OF NINETY-FOUR (94') FEET TO AN IRON
REINFORCING ROD; THENCE NORTHWESTERLY BY AND ALONG REMAINING LAND OF GRANTORS A DISTANCE OF ONE HUNDRED EIGHTY-ONE (181') FEET TO AN IRON REINFORCING ROD ON THE SOUTHERLY BOUNDARY OF SHADY LANE; THENCE WESTERLY BY
THE SOUTHERLY BOUNDARY OF SHADY LANE A DISTANCE OF ONE HUNDRED NINETY-ONE
(191') FEET TO THE POINT OF BEGINNING.
ALL CORNERS ARE MARKED BY AN IRON REINFORCING ROD DRIVEN INTO THE EARTH. THIS
LOT CONTAINS APPROXIMATELY 1.33 ACRES.

ALSO KNOWN AS: 85 SHADY LANE, WISCASSET, MAINE 04578

Receipt # 24691

E-RECORDED

Bk 5344    PG 231
01/11/2019 01:44:39 PM
Pages 6
MORTGAGES

Instr # 46221
Rebecca S. Wotton Lincoln County Registry of Deeds

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #:

_____ [Space Above This Line for Recording Data] _____

FHA Case No.:
Loan No:

## PARTIAL CLAIMS MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **DECEMBER 7, 2018**. The mortgagor is **ROBERT H ROGERS JR AND, MARY H ROGERS** ("Borrower"), whose address is **85 SHADY LANE, WISCASSET, MAINE 04578**. This Security Instrument is given to the **Secretary of Housing and Urban Development**, whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **NINE THOUSAND SIX HUNDRED FIFTY-FIVE DOLLARS AND 97 CENTS** Dollars (U.S. **$9,655.97**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **DECEMBER 1, 2048**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the **COUNTY** of **LINCOLN**, State of **MAINE**:

which has the address of , **85 SHADY LANE, WISCASSET, MAINE 04578** (herein "Property Address");
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No.

Page 1

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Page 2

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**7. Lender's Rights.** If Borrower Fails to Keep Promises and Agreements. After the occurrence of the conditions stated in subsections (a), (b) and (c) below, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subsections (a), (b) and (c) of this Section 7 are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this Section 7 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Note;

(b) Lender sends to me, at least 35 days before demanding immediate payment in full or otherwise enforcing this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep;

    (2) The action that I must take to correct that default;

    (3) My right to cure the default by full payment of all amounts that are due under the Note and under this Security Instrument, including reasonable interest and late charges specified in the Note or this Security Instrument, as well as reasonable attorney fees;

    (4) An itemization of all past due amounts causing the loan to be in default;

    (5) An itemization of any other charges that must be paid in order to cure the default;

    (6) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

    (7) That I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required;

    (8) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

    (9) Such other matter as is required by Maine law.

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

**8. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument

BK: 5344 PG: 233

has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

9. **Payment During Foreclosure.** I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 7 above. Lender may use such monies to payoff any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

10. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

11. **Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the date the Subordinate Mortgage is given, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Subordinate Mortgage is given; Borrower will remain liable for any such costs, fees and/or expenses.**

12. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of interim relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Subordinate Note/Mortgage.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

_____  12/28/18
Borrower: ROBERT H ROGERS JR          Date

_____  12/28/18
Borrower: MARY H ROGERS                Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF MAINE
COUNTY OF Lincoln

The foregoing instrument was acknowledged before me this  Dec. 28, 2018  by **ROBERT H ROGERS JR, MARY H ROGERS**

_____
Notary Public

Print Name: Linda F. Smith

My commission expires: 8/27/19

[Notary Seal: LINDA F. SMITH NOTARY PUBLIC My Comm. Exp. Aug 27, 2019 MAINE]

Page 5

EXHIBIT A

BORROWER(S): ROBERT H ROGERS JR AND, MARY H ROGERS

LOAN NUMBER:

LEGAL DESCRIPTION:

The land referred to in this document is situated in the STATE OF MAINE, COUNTY OF LINCOLN, CITY/TOWN OF WISCASSET, and described as follows:

A CERTAIN LOT OR PARCEL OF LAND, TOGETHER WITH BUILDINGS THEREON, SITUATE IN
THE TOWN OF WISCASSET, COUNTY OF LINCOLN, STATE OF MAINE, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF SHADY LANE, WHICH POINT IS THE NORTHEASTERLY CORNER OF THE LAND OF DONALD A. TRUE AND DENISE L. TRUE (REFERENCE DEED RECORDED IN THE LINCOLN COUNTY REGISTRY OF DEEDS IN BOOK 2055,
PAGE 216); THENCE SOUTHERLY ALONG THE PROPERTY OF SAID TRUE A DISTANCE OF TWO
HUNDRED TWENTY-NINE (229') FEET TO AN IRON REINFORCING ROD; THENCE EASTERLY (AT
A 90° ANGLE) BY AND ALONG REMAINING LAND OF GRANTORS A DISTANCE OF ONE HUNDRED
NINETY-ONE (191') FEET TO AN IRON REINFORCING ROD; THENCE NORTHEASTERLY BY AND
ALONG REMAINING LAND OF GRANTORS A DISTANCE OF NINETY-FOUR (94') FEET TO AN IRON
REINFORCING ROD; THENCE NORTHWESTERLY BY AND ALONG REMAINING LAND OF GRANTORS A DISTANCE OF ONE HUNDRED EIGHTY-ONE (181') FEET TO AN IRON REINFORCING ROD ON THE SOUTHERLY BOUNDARY OF SHADY LANE; THENCE WESTERLY BY
THE SOUTHERLY BOUNDARY OF SHADY LANE A DISTANCE OF ONE HUNDRED NINETY-ONE
(191') FEET TO THE POINT OF BEGINNING.
ALL CORNERS ARE MARKED BY AN IRON REINFORCING ROD DRIVEN INTO THE EARTH. THIS
LOT CONTAINS APPROXIMATELY 1.33 ACRES.

ALSO KNOWN AS: 85 SHADY LANE, WISCASSET, MAINE 04578